# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS

UNITED STATES OF AMERICA,

            Plaintiff,    :    Case No. 2:18-cr-067
                                      Also 2:19-cv-05312

                                      District Judge James L. Graham
- vs -                                Magistrate Judge Michael R. Merz

RAVEN SYMONE McDONALD,

            Defendant.    :

## REPORT AND RECOMMENDATIONS

This case is before the Court on Defendant's *pro se* Motion to Vacate pursuant to 28 U.S.C. § 2255 (ECF No. 44). Upon order of Magistrate Judge Chelsey Vascura (ECF No. 45), the United States has filed a Response to the Motion (ECF No. 56). The Order for Answer provided that Defendant would have fourteen days from the date the Government filed an answer to herself file a reply (ECF No. 45, PageID 221). Because the Government's Response was served by mail on February 18, 2020, Defendant's reply was due to be filed by March 13, 2020[1]. However, no reply has been filed and the Motion to Vacate is ripe for decision.

McDonald pleads one ground for relief:

> **Ground One:** My sentence was imposed in violation of my Sixth Amendment right to effective assistance of counsel.

---

[1] Under Fed.R.Civ.P. 6, a litigant has three extra days to respond when an opposing party serves filings by mail.

> **Supporting Facts:** I was appointed an Assistant Federal Public Defender, Laura Byrum, who resides in Ohio. I was not appointed a Federal Public Defender who resides in California (my state of residence). I was unable to meet with my counsel. Our main means of communication was through video conferences, which were often canceled and/or rescheduled.
>
> My counsel failed to schedule meetings with the U.S. Attorney and Government Investigator. Laura Byrum received several calls from the Investigator and the U.S. Attorney requesting a meeting with me. They wanted to interview me and get my input on the case. Ms. Byrum did not respond to their requests or schedule any meetings with them.
>
> My counsel failed to interview any potential witnesses or meet with the prosecutor to determine my guilt or innocense [sic]. It was stated by the Investigator and the prosecutor, during the Sentencing Hearing on 11/29/18, that I was unaware of the debarment letters. This unawareness was verified by Neina Johnson and Janay Ruiz. My counsel failed to believe that I was unaware of the debarment letters or investigate to determine the validity of my claim. The Prosecutor also stated, on 11/29/18 during the Sentencing Hearing, that I benefited the least financially. I was not aware of Janay Ruiz and Neina Johnson's plan to defraud the government. However, my counsel encouraged me to plead guilty. I believe that I was prejudiced by counsel Laura Byrum's errors.

(Motion, ECF No. 44, PageID 211.)

In response to the Motion, the United States obtained and filed an Affidavit of Laura Byrum on her handling of this case (ECF No. 58). Ms. Byrum avers that she is an Assistant Federal Defender for this judicial district and was appointed September 9, 2015, to represent McDonald in relation to a target letter the United States had sent to McDonald. *Id.* at ¶ 3. Because McDonald

resided in California throughout the case, she and Attorney Byrum communicated electronically. *Id.* at ¶ 4.

In preparation to defend the case Ms. Byrum met with the assigned prosecuting attorney and agents of the Department of Defense involved in investigating the case and reviewed the discovery documents the Government provided. *Id.* at ¶ 6. The Government alleged that McDonald and three co-defendants conspired to continue to sell products to the Defense Logistics Agency after having been debarred from doing business with DOD. McDonald denied any knowledge of the debarment. *Id.* at ¶ 8. In response, Ms. Byrum asked for discovery on that issue and was given a copy of the debarment letter sent to Jantech, Inc., October 1, 2013, but without a May 2013 notice of proposed debarment or any confirmation that the October letter had been received. *Id.* Ms. Byrum avers she did not discuss the case with the co-defendants because they were represented by counsel. *Id.*

The United States was interested early on in McDonald's potential cooperation, especially against co-defendant Candace Villar. *Id.* at ¶ 9. In September 2017 and again in January 2018 the United States proposed written plea agreements which Byrum and McDonald spent several hours discussing. *Id.* at ¶ 11. Byrum avers that McDonald knew as of their March 7, 2018, video conference, that the United States Attorney intended to present the case to the grand jury not later than March 15, 2018. *Id.* at ¶ 12. The Assistant United States Attorney provided Byrum with a proffer letter on March 9, 2018. Despite repeated attempts by Byrum, McDonald did not respond. On March 14, 2018, the day after the indictment was handed down, Byrum sent McDonald a copy. *Id.* at ¶ 16. McDonald responded by email, confirming that she had rejected the plea offer. *Id.* On March 16, 2018, the Assistant United States Attorney orally offered a new plea agreement which

would remain open until April 6, 2018. *Id.* at ¶ 18. However, on March 20, 2018, Byrum learned that McDonald had retained counsel. *Id.* at ¶ 20. Byrum's Affidavit was filed and served on McDonald on March 2, 2020; she has not responded or controverted any of Byrum's averments.

McDonald has three times moved the Court to provide her with free copies of her transcripts, motions which have been denied by Magistrate Judge Chelsey Vascura, to whom this case was previously referred. In her most recent Motion she claims that reading those transcripts would exonerate her (ECF No. 57, PageID 277). The Magistrate Judge has read the only transcript prepared in this case which is of the sentencing hearing before Judge Graham on November 29, 2018 (ECF No. 39). During that hearing, the Assistant United States Attorney acknowledged that the co-defendants Ruiz and Johnson, who were much more in charge of the business than McDonald, had kept from McDonald knowledge of both the proposed debarment and the actual debarment. *Id.* at PageID 160. As a result the United States withdrew its request for a sentence enhancement based on the prior administrative order. *Id.* at PageID 161. The Government also conceded McDonald should receive a two-point reduction for having played a minor role in the conspiracy. *Id.* at PageID 167. After granting all the defense objections, Judge Graham calculated a sentencing range under the Sentencing Guidelines of forty-one to fifty-one months and McDonald's counsel had no objections. *Id.* at PageID 178. Judge Graham then agreed to a very substantial downward departure, accepted the sentencing range of fifteen to twenty-eight months which had been agreed upon in the Plea Agreement, and sentenced McDonald within that range. *Id.* at PageID 180, 191. In addition to the reduced sentencing range, McDonald was permitted to self-surrender and assigned to the federal correctional facility she requested and where she is presently incarcerated. Having read the transcript as requested, the Magistrate Judge does not find

4

that it exonerates McDonald or reduces her responsibility for these offenses below the level reflected in the sentence actually imposed.

## Analysis

A prisoner seeking relief under 28 U.S.C. § 2255 must allege either "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid" *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003); *Nichols v. United States,* 563 F.3d 240, 250 (6th Cir. 2009). In other words, to warrant relief under § 2255, a prisoner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect of influence on the guilty plea or the jury's verdict. *Griffin v. United States*, 330 F.3d 733, 737 (6th Cir. 2006), *citing Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). To obtain relief under 28 U.S.C. § 2255, a defendant must establish the denial of a substantive right or defect in the trial that is inconsistent with the rudimentary demands of fair procedure. *United States v. Timmreck,* 441 U.S. 780 (1979); *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990)(*per curiam*). Relief under 28 U.S.C. § 2255 is available when a federal sentence was imposed in violation of the Constitution or laws of the United States or the trial court was without jurisdiction or the sentence is in excess of the maximum sentence allowed by law, or is "otherwise subject to collateral attack." *United States v. Jalili,* 925 F.2d 889, 893 (6th Cir. 1991).

Defendant has alleged a violation of her constitutional right to the effective assistance of counsel, a right guaranteed by the Sixth Amendment to the United States Constitution. The

5

standard for evaluating claims of ineffective assistance of trial counsel. The governing standard for ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687. In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice. *Berghuis v. Thompkins,* 560 U.S. 370, 389 (2010), *citing Knowles v. Mirzayance,* 556 U.S.111 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome." 466 U.S. at 694. *See also Darden v. Wainwright*, 477 U.S. 168, 184 (1986), *citing Strickland, supra.*; *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998), *citing Strickland, supra*; *Blackburn v. Foltz*, 828 F.2d 1177, 1180 (6th Cir. 1987), *quoting Strickland,* 466 U.S. at 687. "The likelihood of a different result must be substantial, not just conceivable." *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011), *quoting Harrington v. Richter*, 562 U.S. 86, 111-12 (2011).

> In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. See *Wong v. Belmontes*, 558 U.S. 15, 27, 130 S. Ct. 383, 175 L. Ed. 2d 328 (2009) (per curiam); *Strickland*, 466 U.S., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674. Instead, *Strickland* asks whether it is "reasonably likely" the result would have been different. Id., at 696, 104 S. Ct. 2052, 80 L. Ed. 2d 674. This does not require a showing that counsel's actions "more likely than not altered the outcome," but the difference between *Strickland's* prejudice standard and a more-probable-than-not standard is slight and matters "only in the rarest case." *Id*., at 693, 697, 104 S. Ct. 2052, 80 L. Ed. 2d 674. The likelihood of a different result must be substantial, not just conceivable. *Id*., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674.

*Harrington v. Richter*, 562 U.S. 86, 111-112 (2011).

As the United States points out in its response, a defendant only has a claim that she has been deprived of the effective assistance of counsel when the deficient performance occurs in a proceeding in which a defendant is constitutionally entitled to counsel. *Wainwright v. Torna*, 455

7

U.S. 586 (1982)(where there is no constitutional right to counsel there can be no deprivation of effective counsel); *Riggins v. Turner*, 1997 U.S. App. LEXIS 6115, *5 (6th Cir. 1997); *Barkley v. Konteh*, 240 F. Supp. 2d 708, 714 (N.D. Ohio 2002).

The Sixth Amendment constitutional right to counsel only "attaches" (becomes applicable) when formal judicial proceeding are commenced against a defendant. *Turner v. United States,* 885 F.3d 949, 955 (6th Cir. 2018), *cert. denied,* 139 S. Ct. 2740(2019). The right only attaches upon "the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Id*. at 952 (quoting *Rothgery v. Gillespie Cty.*, 554 U.S. 191, 198 (2008)). When there is no Sixth Amendment right to counsel there is accordingly no basis for a claim of ineffective assistance of counsel. *Id*. at 955. No criminal proceeding of the type that triggers the Sixth Amendment right occurred in tjis case until McDonald was indicted on March 13, 2018.

Under the Criminal Justice Act, 18 U.S.C. § 3006A, and this Court's plan for implementing the Act, counsel may be appointed by the Court for anyone who receives a letter from a government agency indicating that they are under investigation for a felony offense, a so-called target letter. McDonald received such a letter in July 2015 (ECF No. 56-1, PageID 260) and apparently requested appointment of counsel because Ms. Byrum was appointed September 9, 2015 (Byrum Affidavit, ECF No. 58, ¶ 3, PageID 279). Ms. Byrum continued to provide legal representation to McDonald until March 20, 2018, when she was replaced by retained counsel, David Murphy, who continued to represent McDonald through guilty plea and sentencing.

McDonald has not alleged any deficient performance by Byrum in the one-week period from March 13, 2018, when McDonald was indicted until Murphy took over the defense. In fact, her allegations about deficient performance before that are either conclusory or refuted by the

8

record. She does not name any witnesses whom Byrum failed to interview and Byrum has documented her own involvement with government counsel, the investigators, and the discovery produced. Whether believed McDonald did not know about the debarment letters is irrelevant: Johnson and Ruiz admitted concealing them from her and Judge Graham effectively found she did not know, based on the Government's concession.

McDonald also was not convicted on the basis of her knowledge of the debarment letters or lack thereof. When she pleaded guilty on the advice of Mr. Murphy, she admitted significant other facts upon which the finding of guilt was based (Plea Agreement, Statement of Facts, ECF No. 21, PageID 63, et seq.[2])

In addition to failing to point to any deficient performance by Ms. Byrum, McDonald fails to point to any prejudice she suffered as a result of Byrum's representation, either during the one week she was constitutionally entitled to effective representation or at any time. She merely states her belief that Byrum performance prejudiced her, but does not state any facts upon which that belief is based. Although she blames Ms. Byrum for advising her to plead guilty, obviously Mr. Murphy also gave her that advice and she followed it. She does not point to any viable defense she would have had in the face of the facts she admitted were true.

**Conclusion**

Defendant has not established that she suffered ineffective assistance of trial counsel from the representation she received from Assistant Public Defender Byrum. It is therefore respectfully recommended that the Motion to Vacate be dismissed with prejudice. Because reasonable jurists

---

[2] These facts are not repeated here because this Report will be filed as a public document, but the Plea Agreement was filed under seal.

would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

April 9, 2020.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal.